**NATIONAL INDEMNITY COMPANY,**
**Appellant,**

v.

**MUTUAL SERVICE CASUALTY**
**COMPANY, Respondent.**

**No. 51186.**

Supreme Court of Minnesota.

Nov. 6, 1981.

Schermer, Schwappach, Borkon & Ramstead and Barbara Heck, Minneapolis, for appellant.

Lommen, Nelson, Sullivan & Cole and Thomas Jacobson, Minneapolis, for respondent.

TODD, Justice.

This is an appeal by plaintiff National Indemnity Company from a summary judgment in favor of Mutual Service Casualty

Company. The issues raised are whether Minn.Stat. § 65B.53, subd. 1 (1978), which permits indemnity for economic loss benefits paid, from the insurer of a commercial vehicle, denies equal protection of the laws, and whether Minn.Stat. § 65B.53, subd. 4 (1980), which requires arbitration of such indemnity claims, denies a jury trial in violation of the Minnesota Constitution. We reject both claims and, accordingly, we affirm.

On March 15, 1977 a 2.5-ton Chevrolet tow truck operated by North End Towing and insured by National Indemnity collided with a van insured by Mutual Service. The impact of the collision impelled the van into a station wagon also insured by Mutual Service. The drivers of and passengers in both the van and the station wagon sustained injuries. Mutual Service paid basic economic loss benefits in the total amount of $35,572.70.

Mutual Service sought indemnity for the sums paid from National Indemnity pursuant to Minn.Stat. § 65B.53, subd. 1 (1978):

> A reparation obligor paying or obligated to pay basic or optional economic loss benefits is entitled to indemnity subject to the limits of the applicable residual liability coverage from a reparation obligor providing residual liability coverage on a commercial vehicle if negligence in the operation, maintenance or use of the commercial vehicle was the direct and proximate cause of the injury for which the basic economic loss benefits were paid or payable to the extent that the insured would have been liable for damages but for the deduction provisions of section 65B.51, subdivision 1.

In accordance with Minn.Stat. § 65B.53, subd. 4 (1980), Mutual Service made a demand for binding arbitration: "The right of indemnity provided in subdivision 1 shall be enforceable only through mandatory good-faith and binding arbitration procedures established by rule of the commissioner of insurance." National Indemnity declined to arbitrate and instead commenced this action to determine the constitutionality of the statute. Both parties moved for sum-

mary judgment. The district court granted it in favor of Mutual Service, ruling that the statute neither denies equal protection of the laws nor infringes the right to a jury trial. This appeal followed.

Minn.Stat. § 65B.42 (1980) specifies the several objectives of the Minnesota No-Fault Automobile Insurance Act including "to create a system of mandatory intercompany arbitration to assure a prompt and proper allocation of the costs of insurance benefits between motor vehicle insurers." Section 65B.53 (1978) is, on its face, directly responsive to that goal, providing for indemnity from insurers of commercial vehicles. National Indemnity argues that the classification of vehicles as commercial or noncommercial bears no rational relationship to fair cost allocation between insurers.

Our No-Fault Act is based in part on the Uniform Motor Vehicle Accident Reparations Act (UMVARA) and we have indicated that we will look to it in ascertaining legislative intent. *Record v. Metropolitan Transit Commission*, 284 N.W.2d 542 (Minn. 1979). Section 38 of UMVARA states that a reimbursement system is required

> to assure that the allocation of the financial burden of losses will be reasonably consistent with the propensities of different vehicles to affect probability and severity of injury to persons or physical damage to vehicles because the vehicles are of different weight or have different devices for the protection of occupants, other different characteristics, or different regular uses.

The comment to section 38 emphasizes that it is needed to render a no-fault system equitable specifically with respect to car-truck collisions. Since under the tort system the costs of such accidents are borne in great part by the trucking industry, a major shift would occur with a no-fault system, possibly resulting in the entire savings going to the trucking industry and an increase in private automobile insurance premiums. Although our statute does not adopt the UMVARA approach of proportionate reimbursement based on statistical vehicle characteristics regardless of fault, it is not entirely dissimilar.

"Commercial vehicle" is defined in Minn.Stat. § 65B.43, subd. 12 (1980) in pertinent part as:

(a) any motor vehicle used as a common carrier,

(b) any motor vehicle, other than a passenger vehicle or a station wagon, as those terms are defined in section 168.011, subdivisions 7 and 23, which has a curb weight in excess of 5500 pounds apart from cargo capacity, or

(c) any motor vehicle while used in the for-hire transportation of property.

Mutual Service argues that both the physical characteristics of a vehicle and its usage, the factors expressed in this section, are proper bases for loss allocation because they relate to the vehicle's damage causing propensity both with respect to severity and probability. Subsection (b), by excluding passenger vehicles and station wagons and including all other vehicles in excess of 5500 pounds, limits "commercial vehicles" in effect to trucks in keeping with the specific concerns expressed in UMVARA. Principles of physics indicate that heavier vehicles tend to cause more damage than lighter vehicles when involved in collisions. In addition, other characteristics of trucks such as their height, width, and durability debatably enhance their damage causing propensity over that of passenger vehicles of comparable weight. We also find distinction on the basis of usage as a common carrier or for-hire transporter of property unobjectionable. The many hours that such vehicles spend on the highways make them likely to be involved in more accidents. We cannot say that any of these legislative facts "could not reasonably be conceived to be true" by the lawmakers. *State of Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981), quoting *Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979).

National Indemnity also argues that constitutionally it is entitled to a jury trial on the indemnity claim. Article 1, section 4 of the Minnesota Constitution guarantees the right to a jury trial in "all cases at law." It is well-established that indemnity is an equitable remedy. *Hendrickson v. Minnesota Power & Light Co.*, 258 Minn. 368, 104 N.W.2d 843 (1960). It is equally clear that there is no right to a jury trial on equitable claims. *Georgopolis v. George*, 237 Minn. 176, 54 N.W.2d 137 (1952).

Affirmed.