## FARMERS INSURANCE GROUP, Respondent,

v.

## GENERAL CASUALTY COMPANIES, Appellant.

No. C8–89–999.

Court of Appeals of Minnesota.

Oct. 24, 1989.

Steven R. Schwegman, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, for respondent.

Patrick C. Cronan, Arthur, Chapman & McDonough, P.A., Minneapolis, for appellant.

Heard, considered and decided by RANDALL, P.J., and FOLEY and FLEMING*, JJ.

## OPINION

WILLIAM J. FLEMING, Judge.

In this appeal we consider whether a pickup truck-trailer combination with a curb weight over 5,500 pounds is a commercial vehicle within the meaning of Minn. Stat. § 65B.53. The trial court decided that such a combination is a commercial vehicle and granted summary judgment accordingly. We affirm.

On November 12, 1982, James Stephens suffered personal injuries while riding as a passenger in a 2,000 pound Dodge pickup truck driven by Clarence Ewell and owned by M & S Construction, Inc. The pickup, towing a trailer containing a Ditch Witch, was involved in a collision with another vehicle on Minnesota Highway 95 in Princeton, Minnesota.

Stephens was insured by respondent Farmers Insurance (Farmers) and received $13,879.00 in no-fault benefits from Farmers. M & S was insured for liability coverage by appellant General Casualty Companies (General Casualty).

In June, 1987, Farmers commenced this declaratory judgment action against General Casualty to determine whether Farmers is entitled to indemnity against General Casualty, pursuant to Minn.Stat. § 65B.53, subd. 1, for the no-fault benefits paid to

---

* Acting as judge of the Court of Appeals by ap-   pointment pursuant to Minn. Const. art. VI, § 2.

Stephens. Both parties moved for summary judgment. The parties stipulated that General Casualty's insured was negligent and that such negligence was a direct cause of Stephens' injuries. They also stipulated that the combined weight of the Dodge pickup and the trailer, excluding the Ditch Witch, exceeded 5,500 pounds. Based on this information, the trial court granted Farmers' motion for summary judgment. This appeal follows.

### ISSUE

Was General Casualty's insured operating a "commercial vehicle" within the meaning of Minn.Stat. § 65B.53, subd. 1?

### ANALYSIS

Farmers' right to indemnity for no-fault benefits paid is governed by Minn.Stat. § 65B.53, subd. 1 (1986), which provides:

A reparation obligor paying or obligated to pay basic or optional economic loss benefits is entitled to indemnity subject to the limits of the applicable residual liability coverage from a reparation obligor providing residual liability coverage *on a commercial vehicle of more than 5,500 pounds curb weight* if negligence in the operation, maintenance or use of the commercial vehicle was the direct and proximate cause of the injury for which the basic economic loss benefits were paid or payable to the extent that the insured would have been liable for damages but for the deduction provisions of section 65B.51, Subdivision 1.

(Emphasis added). General Casualty insists that the trial court erred in determining that the truck and trailer combination, insured by General Casualty, is a "commercial vehicle" within the meaning of Minn. Stat. § 65B.53, subd. 1. This issue is a question of statutory interpretation; therefore, review is de novo. *Matter of Welfare of M.J.M.*, 416 N.W.2d 142, 146 (Minn.Ct. App.1987).

A preliminary statutory analysis will clarify the point in contention. Minn.Stat. § 65B.43, subd. 12 (1986) defines "commercial vehicle." That provision states in pertinent part:

"Commercial vehicle" means:

\* \* \* \* \* \*

(b) any *motor vehicle,* other than a passenger vehicle or a station wagon, as those terms are defined in Section 168.-011, subdivisions 7 and 23, which has a curb weight in excess of 5500 pounds apart from cargo capacity.

(Emphasis added.) Minn.Stat. § 65B.43, subd. 2 defines "motor vehicle." That provision states:

"Motor vehicle" means every vehicle \* \* \* which (a) is required to be registered pursuant to chapter 168 and (b) is designed to be self-propelled by an engine or motor for use primarily upon public roads, highways, or streets \* \* \* and *includes a trailer with one or more wheels, when the trailer is connected to or being towed by a motor vehicle.*

(Emphasis added.)

Therefore, a "commercial vehicle" includes a pickup truck-trailer combination weighing over 5,500 pounds, unless that combination falls within an exclusionary phrase of § 65B.43, subd. 12(b). That statute excludes "passenger vehicles" and "station wagons" as those terms are defined in § 168.011, subd. 7 and 23. The "station wagon" exclusion is clearly inapplicable; therefore, analysis is limited to the meaning of "passenger vehicle."

Minn.Stat. § 168.011, subd. 7 provides: Subd. 7. *Passenger Automobile.* "Passenger automobile" means any motor vehicle designed and used for the carrying of not more than ten persons including station wagons but excluding motorcycles and motor scooters. *For purposes of taxation only, "passenger automobile" includes pickup trucks and vans.*

(Emphasis added.) From this provision, it is evident that a pickup truck, for non-taxation purposes, is not a passenger vehicle. The court does not even need to consider whether the attached trailer removed the pickup truck from this category.

Therefore, since the pickup truck-trailer combination does not fall within the exclusionary language of § 65B.43, subd. 12, the pickup truck-trailer is a "commercial ve-

hicle" within the meaning of § 65B.43, subd. 12. Consequently, under this preliminary statutory analysis, Farmers is entitled to indemnity from General Casualty under § 65B.53, subd. 1 since the truck-trailer combination exceeded 5,500 pounds and was a "commercial vehicle."

General Casualty's only significant argument is that the definitions under Minn. Stat. § 65B.43 do not apply where the "context clearly indicates a different meaning." Minn.Stat. § 65B.43, subd. 1. Specifically, General Casualty argues that § 65B.43, subd. 2, which defines "motor vehicle" to include attached trailers, does not apply. General Casualty contends that the legislative history behind the indemnity statute supports the proposition that the weight of an attached trailer is not to be considered when determining whether a vehicle is a "commercial vehicle" as defined in § 65B.43, subd. 12.

Our No–Fault Act is partly based on the Uniform Motor Vehicle Accident Reparations Act (UMVRA) and we may look to that act in ascertaining legislative intent. *National Indemnity Co. v. Mutual Service Casualty Co.,* 311 N.W.2d 856, 857 (Minn.1981). Section 38 of UMVRA states that an indemnity system is needed

> to assure that the allocation of the financial burden of losses will be reasonably consistent with the propensities of different vehicles to affect probability and severity of injury to persons or physical damage to vehicles because the vehicles are of different weight or have different devices for the protection of occupants, other different characteristics, or different regular uses.

The comment to section 38 explains that 90% of damages arising out of truck-car collisions are caused by trucks. Under a liability system, truck owners bear this proportion of damages by paying higher premiums to their insurers. Under a no-fault system, were there no reallocation statute, this burden would be shifted to the car owners. This is because auto insurers who pay basic benefits on these damages must increase premiums to pass on the cost. The reallocation statute keeps the burden on the truck owners by permitting auto insurers to seek indemnity against truck insurers for benefits paid. Truck insurers then pass this cost on to the truck owners by requiring higher premiums. It seems reasonable to attribute this legislative intent to the Minnesota legislature in its enactment of § 65B.53. *National Indemnity.*

How will the burdens of insureds be affected if the court determines that "commercial vehicle", within the meaning of Minn.Stat. § 65B.43, subd. 12, includes attached trailers as provided by § 65B.43, subd. 2? In such a case insurers of light motor vehicles (that are not "passenger vehicles" or "station wagons") pulling trailers will be subject to indemnity actions. These insurers may find it difficult to pass this cost on to casual users of trailers. However, those who use heavy trailers regularly could be forced to pay higher premiums. This latter class includes large trucks which consist of light cabs pulling heavy trailers. If trailers were excluded from consideration, these trucks could slip through the indemnity statute.

Thus, while reallocation of costs to trailer users is imperfect, it does further the goals of the indemnity statute. A trailer, due to its weight, does have a greater propensity to cause damage. By considering the weight of a trailer when determining whether a "motor vehicle" is a "commercial vehicle," the financial burden caused by this propensity to cause damage is placed on the trailer owner.

Therefore, it cannot be said that the context of Minn.Stat. § 65B.43, subd. 12, clearly requires a meaning of "motor vehicle" different than that provided by § 65B.43, subd. 2. Consequently, the preliminary statutory analysis provided above is appropriate. Farmers is entitled to indemnity from General Casualty.

In General Casualty's statement of the case, a second issue was identified, involving a release and settlement. This issue was not addressed in General Casualty's brief; therefore it is waived. *Melina v.*

*Chaplin,* 327 N.W.2d 19, 20–21 (Minn. 1982).

## DECISION

The weight of an attached trailer must be considered when determining whether a motor vehicle is a "commercial vehicle" within the meaning of Minn.Stat. § 65B.43, subd. 12.

Affirmed.