Barbara Lynn NASH and Ramsey County, Appellants,

Commissioner of Human Services, Respondent,

Angelyn Joy Nash, Respondent,

v.

Frank ALLEN, Respondent.

No. C8–86–342.

Court of Appeals of Minnesota.

Aug. 12, 1986.

Review Denied Oct. 22, 1986.

Tom Foley, Ramsey Co. Atty., Gail L. Young, Asst. Co. Atty., St. Paul, for appellants.

Hubert H. Humphrey, III, Minnesota Atty. Gen., Deborah L. Huskins, Sp. Asst. Atty. Gen., St. Paul, for respondent Com'r of Human Services.

William Falvey, Ramsey Co. Public Defender, Mary E. McGinnis, Asst. Ramsey Co. Public Defender, St. Paul, for respondent Angelyn Joy Nash.

Stuart E. Schmitz, St. Paul, for respondent Frank Allen.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and RANDALL, JJ.

## OPINION

POPOVICH, Chief Judge.

Ramsey County and Barbara Lynn Nash have appealed from an order denying their motion for summary judgment and from an order approving a lump sum compromise in this paternity action. We affirm and remand.

## FACTS

Angelyn Joy Nash was born out of wedlock to Barbara Lynn Nash on December 5, 1983. Ramsey County and Barbara Lynn Nash thereafter commenced this paternity action against respondent Frank Allen and another man to determine who was the father of Angelyn Joy. Blood tests were administered, resulting in a determination that the other man could not have been one of the biological parents of the child. As a result, he was dismissed from the lawsuit with prejudice. The blood tests also disclosed a 98.864 percent likelihood that Frank Allen was the father.

Following discovery and a pretrial hearing, a motion by appellants for summary judgment and a second pretrial hearing were both conducted on the day of trial. The court denied appellants' motion for summary judgment, concluding the issue of paternity could not be resolved since Allen continued to claim he was not the father of Angelyn Joy.

During the pretrial hearing, Allen proposed a compromise involving payment of two lump sums into a guaranteed annuity account. One sum of $11,000 was to be paid by Allen immediately, and another $11,000 lump sum payment was to be made in eight years. From that account, an annuity of $200 per month would be paid to Barbara Lynn Nash until Angelyn Joy reached the age of 18.

Because a compromise had been proposed, the court requested a representative of the Commissioner of Human Services appear and be made a party. The representative and the county both opposed the compromise. The record does not reveal whether Barbara Lynn Nash opposed or approved of the compromise.

The court also made Angelyn Joy a party, and appointed a guardian ad litem to act on her behalf. The court explained this action was taken because of a "realistic possibility * * * that plaintiffs might not prevail on the issue of paternity." After due consideration, the guardian ad litem recommended that the proposed compromise be accepted.

The court believed the compromise should be accepted, but only if Allen admitted in open court he was the father of Angelyn Joy. Despite argument by the county and the Commissioner that Allen should be required to pay support in accordance with the child support guidelines and the matter proceed to trial, the court determined the compromise should be accepted and reduced to judgment. On the record, the court summarized the compromise and heard the testimony of the guardian ad litem, Allen's acknowledgement of paternity and agreement to the compromise, and the objections of the county.

The Commissioner did not appear and voice objections on the record. Pursuant to this compromise, by order dated January 28, 1986, Allen was adjudicated the father of Angelyn Joy.

## ISSUES

1. Is the Commissioner of Human Services a proper party to this appeal?

2. Should the trial court have granted the plaintiffs' motion for summary judgment?

3. May the court recommend a lump sum settlement as an incentive to a purported father to acknowledge paternity and order that the proposed settlement be accepted?

4. Was the lump sum settlement in the best interests of the child and the other parties?

5. Should the court have appointed separate counsel to represent Barbara Lynn Nash?

6. Did the trial court improperly determine the expenses to be paid by Allen?

## ANALYSIS

■ 1. The Commissioner of Human Services, although a party below, did not file a notice of appeal or join in the county's appeal. The Commissioner is not a proper party to this appeal. See Minn.R. Civ.App. P. 103. We will not consider those issues raised solely by the Commissioner.

■ 2. Appellants claim the trial court improperly denied their motion for summary judgment because no factual issues exist. See Minn.R.Civ.P. 56.03. While the denial of a motion for summary judgment is not ordinarily appealable, we review the court's order under Minn.R.Civ.App.P. 103.-04.

■ We note the likelihood Allen is the father of Angelyn Joy is only 98.864 percent—not 100 percent. There is some chance he is not the father. In State v. Hagen, 382 N.W.2d 556 (Minn.Ct.App. 1986), this court upheld a jury verdict in favor of an alleged father whose blood tests revealed a 99.62 percent likelihood of paternity.

Here, while Allen does not deny he had intercourse with Nash, he claims the date was on or about March 2, 1983, while Nash claims she conceived the child on or about March 31 or April 1983. There are no facts in the record indicating when conception actually occurred. In view of the disparate dates alleged by the parties, denial of summary judgment was appropriate.

Appellants claim their motion should have been granted because it was supported by an affidavit, whereas Allen did not provide specific facts by means of an affidavit. However, the date of intercourse issue appears in Allen's answers to interrogatories. See Minn.R.Civ.P. 56.03. Further, appellants' affidavit was signed by their attorney. See Peterson v. American Family Mutual Ins. Co., 280 Minn. 482, 487, 160 N.W.2d 541, 544 (1968) (affidavit by a person who may not properly testify at trial will have no effect); Boulevard Del, Inc. v. Stillman, 343 N.W.2d 50, 52–53 (Minn.Ct.App. 1984) (attorney's affidavit stating what the attorney believes will be disregarded); Minn.R.Civ.P. 56.05.

■ 3. The legislature has provided for settlement or compromise of paternity lawsuits and for the lump sum payment of child support. See Minn.Stat. §§ 257.64, 257.66, subd. 4 (1984). Where parties agree to a "compromise" of a paternity action under Minn.Stat. § 257.64, subd. 1(b), the father and child relationship is not determined, but a defined economic obligation is undertaken by the alleged father. Here, the court conditioned its approval of the agreement upon Allen's acknowledgment of paternity:

[T]he court may:

(a) recommend that the alleged father voluntarily acknowledge his paternity of the child if the parties have agreed on a financial settlement * * *.

Minn.Stat. § 257.64, subd. 1(a).

Appellants argue a prerequisite to settlement is an actual agreement by all parties

to a proposed financial settlement. Neither the county nor the Commissioner of Human Services agreed to the settlement. The Commissioner and Angelyn Joy were made parties pursuant to Minn.Stat. § 257.-60:

> If the child is a minor and the case involves a * * * lump sum payment under section 257.66, subdivision 4, the child and the commissioner of human services shall each be made a party before the court approves a compromise or orders a lump sum payment.

*Id.* Minn.Stat. § 257.66, subd. 4 states in part:

> Support judgments or orders ordinarily shall be for periodic payments which may vary in amount. *In the best interest of the child,* a lump sum payment may be ordered in lieu of periodic payments of support.

*Id.* (emphasis added).

While Minn.Stat. § 257.64 states the court may recommend all parties should agree to a settlement, the above language indicates a court may order a lump sum settlement if the child's best interest dictates such arrangement. Here, the court apparently determined the best interest of the child superseded the interests of the county, Barbara Lynn Nash, and the Commissioner. The court stressed the facts and circumstances surrounding Angelyn Joy's conception "raised a realistic possibility * * * that plaintiffs might not prevail on the issue of paternity," and noted "guaranteed payments are vastly more important in [this] case where the father travels very extensively throughout the country and could very well prove in the future to be a person from whom support might be extremely difficult to obtain." The trial court concluded the child was the real party in interest, and relied upon the guardian ad litem's opinion that the lump sum settlement was indeed in the best interest of the child. The court's concern with the child's interest is further evidence that acceptance of the settlement was expressly conditioned upon Allen's admission of paternity, so the

child would have social security, inheritance and other rights.

■ Appellants also claim a lump sum settlement may not be used as an incentive to an admission of paternity. Adoption of this claim, however, would lead to an absurd result. Settlements by their very nature entail the give and take of conditions. If the court or opposing parties were unable to offer a more advantageous financial settlement as bargaining leverage, it is unlikely a purported father would ever acknowledge paternity when settling a lawsuit. When interpreting a statute, it must be presumed the legislature did not intend to produce an absurd result. Minn.Stat. § 645.17(1) (1984).

■ 4. Appellants claim the lump sum settlement was not in the child's best interest and the guardian ad litem did not properly represent the child. Neither party has standing to raise these issues since the child was represented by a guardian ad litem. Indeed, Minn.Stat. § 257.60 (1984) specifically provides if a child is a minor and is made a party, "[t]he child's mother or father may not represent the child as guardian or otherwise." The difference between the parties is made particularly clear here where the mother and county are appellants and the child is a respondent.

Appellants argue other reasons the child's best interest was not protected. Since these alleged errors may also affect their interests, we address them as follows:

(a) Appellants claim there was insufficient financial information to determine Allen's support obligations. No such objection was raised at the hearing; rather, the assistant county attorney noted on the record that financial information had been exchanged earlier. It is axiomatic that issues not raised below will not be considered on appeal. *See Morton v. Board of Commissioners,* 301 Minn. 415, 427, 223 N.W.2d 764, 771 (1974).

■ (b) Appellants claim a settlement or compromise of a paternity lawsuit must comply with the child support guidelines. Appellants cite *Lee v. Ystebo,* 353 N.W.2d

264, 265 (Minn.Ct.App.1984) (the guidelines should be applied in paternity actions which proceed to trial). However, deference to appellants' claim that the guidelines must always be applied would obviate the need for any settlement or compromise of paternity actions whatsoever, and would render those statutory provisions meaningless.

(c) Appellants argue the court improperly considered Nash's unmarried status. While the court noted Nash was receiving AFDC for two children, it is clear the court's primary motivation for awarding the settlement was the child's best interest.

■ 5. Appellants argue there was a conflict of interest between the county and Nash at the settlement proceedings, and the court should have appointed a separate attorney for Nash. Minn.Stat. § 257.69 (1984) states:

> If the child receives public assistance and no conflict of interest exists, the county attorney shall also represent the custodial parent. If a conflict of interest exists, the court shall appoint counsel for the custodial parent at no cost to the parent.

Aside from the county attorney's own allegation, there was no evidence presented below indicating a conflict actually existed. It should be noted the county attorney continues to represent Barbara Lynn Nash on appeal, weakening the argument their interests are divergent.

6. Appellants object to the court's award of expenses, claiming: (a) the amount of reimbursement to the county for past expenses was insufficient; and (b) the court failed to order Allen to pay for the blood tests.

(a) Minn.Stat. § 257.66, subd. 4 states an alleged father's liability for past support of a child shall be limited to the "proportion of the expenses that the court deems just." Here, the court ordered that Allen pay $1250 for past child support. The court explained Nash had already been receiving $434 per month in AFDC payments when Angelyn Joy was born, and the amount of AFDC had increased by $94 because of her birth. Two years of the additional $94 per month payments would have amounted to $2256, and the court therefore ordered Allen to pay approximately one-half of this amount.

■ A paternity action is civil in nature. *Hepfel v. Bashaw,* 279 N.W.2d 342, 344 (Minn.1979). Since the court is given discretion by the legislature to determine past child support, we believe our review is limited to determining whether the court abused that discretion. We do not find such abuse here.

■ (b) Minn.Stat. § 257.69 (1984) provides the court "shall order the adjudicated father to reimburse the public agency, if the court finds he has sufficient resources to pay the costs of the blood test." The trial court failed to make any findings or order regarding this issue. We remand for the sole purpose of determining whether Allen should be required to pay the costs of the blood tests.

## DECISION

1. When the Commissioner of Human Services is not a proper party to an appeal, issues raised solely by the Commissioner will not be considered.

2. The trial court's denial of appellants' motion for summary judgment was proper since a factual issue had been raised concerning the actual date and period of conception.

3. The use of a lump sum settlement as an incentive to an acknowledgment of paternity was proper, and the court could properly order that the settlement be accepted.

4. A lump sum settlement in a paternity action need not comply with the statutory child support guidelines. The settlement was in the best interest of the child.

5. The appointment of separate counsel for the mother was unnecessary, since there was no evidence of a conflict of interest between the mother and the county.

6. The court's calculation of the amount of reimbursement to the county for past expenses was proper; however, the court

failed to consider whether the father should pay for the blood tests.

Affirmed and remanded.