**Charlene Yvonne HOWIE, Respondent,**

v.

**Mark THOMAS, Appellant.**

**No. C7–93–1985.**

Court of Appeals of Minnesota.

April 12, 1994.

John H. McLoone, IV, Waseca, for appellant.

Jeffrey D. Thompson, Rice County Atty., William B. Jacobson, Tracey L. Olson, Asst. Rice County Atty., Faribault, for respondent.

Considered and decided by CRIPPEN, P.J., and AMUNDSON and HARTEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant Mark Thomas challenges a directed verdict in paternity action where a blood test showed a 99.96% probability that he is the father, but he denied ever having had sexual intercourse with the mother.

## FACTS

A female child was born to respondent Charlene Howie on June 23, 1983. The mother commenced an action against appellant through the office of the Rice County Attorney in 1991. After a jury trial, at the close of all the evidence, the trial court granted respondent's motion for a directed verdict that appellant was the father of the child.

Evidence at trial included: (1) a blood test that showed a 99.96% probability that appellant was the father; (2) another blood test which excluded Lynn Jacobson, the man respondent had been dating at the time of conception and birth (and who was named on the birth certificate); (3) respondent's unequivocal testimony that the father had to be Jacobson or appellant (due to one encounter after a party at appellant's mother's house); and (4) testimony by respondent and Jacobson of admissions made by appellant about his awareness that he was the father.

■ Appellant denied ever having had sexual intercourse with respondent, ever having had a party at his mother's house, or ever admitting to anyone that he was the father. Rhonda Gerber, appellant's girlfriend, was present during the conversation of the alleged admission to Jacobson and corroborates appellant's version of the facts.[1]

The trial court noted that there was no rebuttal evidence to show that the blood test procedures were flawed or that a result of 99.96% probability could be achieved without appellant being the father. The trial court granted a directed verdict for respondent.

## ISSUE

Is a directed verdict proper in a paternity action where a blood test shows a greater than 99% probability that the appellant is the father and he bears the statutory burden of proof by clear and convincing evidence, but he denies ever having had sexual intercourse with the mother?

## ANALYSIS

Under Minn.Stat. § 257.62, subd. 5(b) (1992), once results of a blood test from a laboratory accredited by the American Association of Blood Banks show a paternity probability of ninety-nine percent or greater, the burden shifts to the alleged father to show by clear and convincing evidence that he is not the father. Genetic Design, the company that analyzed appellant's blood test, is accredited by the American Association of Blood Banks and the results showed a 99.96% probability that appellant is the father of the child whose parentage is the subject of these proceedings. Thus, appellant had the burden to prove that he was not the father. *Id.; see also* Minn.Stat. § 257.55, subd. 1(f) (1992) (evidence of probability of ninety-nine percent or greater establishes presumption of paternity).

■ The propriety of a directed verdict is a question of law. *Zinnel v. Berghuis Constr. Co.,* 274 N.W.2d 495, 498 (Minn. 1979). It should be granted in those unequivocal cases where, in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or against applicable law. *PMH Properties v. Nichols,* 263 N.W.2d 799, 802 (Minn.1978).

■ In reviewing a directed verdict, this court must make an independent determination of whether the evidence presented was sufficient to present a factual question for the jury. *Nemanic v. Gopher Heating & Sheet Metal,* 337 N.W.2d 667, 669 (Minn. 1983). All evidence favorable to the nonmoving party and all reasonable inferences that

---

1. In addition, there was some testimony by other witnesses that respondent may have had sexual intercourse with other men. The uncontroverted evidence was that conception occurred in the last half of October 1982, but the time frame of these alleged other sexual relations was defined vaguely as August or October of 1982, or even as between June and December of 1982, "when it was nice out." There is no probative value to evidence of sexual relations outside the time of conception. *See Aitkin County Family Serv. v. Gangl,* 441 N.W.2d 814, 816 (Minn.App.1989), *pet. for rev. denied* (Minn. Aug. 15, 1989). Evidence of respondent's other sexual relations during the period of conception must be stated with specificity. *See McNeal v. Swain,* 477 N.W.2d 531, 533 (Minn.App.1991) (evidence of mother's other sexual relations must specify "the time, place or circumstances").

could be drawn from that evidence must be accepted as true. *Zinnel*, 274 N.W.2d at 498; *Tepel v. Sima*, 213 Minn. 526, 527, 7 N.W.2d 532, 533 (Minn.1942).

■ The standards for summary judgment and directed verdict are similar but not identical. *Louwagie v. Witco Chem. Corp.*, 378 N.W.2d 63, 68 (Minn.App.1985). Review of both directed verdict motions and motions for summary judgment require the reviewing court to take a view of the evidence most favorable to the opposing party. *See Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954) (summary judgment); *Zinnel*, 274 N.W.2d at 498 (directed verdict). Where the evidence is circumstantial and sustains two or more inconsistent inferences with equal weight, a directed verdict may be appropriate (because the burden of proof had not been sustained and a contrary verdict would be based on speculation), but a summary judgment would not be. *See Louwagie*, 378 N.W.2d at 68.

■ But where the record includes direct but contradictory evidence on an issue, the test for summary judgment is not significantly different from the test for a directed verdict because in either case, both the trial court and the reviewing court must assume the credibility of the opposing party's evidence. *See Zinnel*, 274 N.W.2d at 498 (for purposes of directed verdict motions, the credibility of opposing party's evidence and every inference which may be fairly drawn are taken as true); *Louwagie*, 378 N.W.2d at 68 (all factual inferences and direct evidence must be drawn in favor of the opposing party for summary judgment motions).

■ This court dealt with a case similar to this one in *Williams v. Curtis*, 501 N.W.2d 653, 656–57 (Minn.App.1993) (defendant's denial of intercourse in likely month of conception sufficient to overcome summary judgment even where he had burden to show by clear and convincing evidence that he was not the father), *pet. for rev. denied* (Minn. Aug. 6, 1993). Here, there is direct evidence in the form of appellant's denial under oath that he ever had sexual intercourse with respondent. *Cf. Itasca County Social Servs. v. Pitzen*, 488 N.W.2d 8 (Minn.App.1992)

(presumption of parentage not rebutted where putative father admits intercourse at critical time and alternative evidence for putative father not probative), *pet. for rev. denied* (Minn. Oct. 20, 1992).

Blood testing generally is the most accurate and reliable proof of paternity, but it is not determinative. *See Johnson v. Van Blaricom*, 480 N.W.2d 138, 141 (Minn.App. 1992). Given the conflict between appellant's and respondent's testimony, the ultimate issue is one of credibility. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Williams*, 501 N.W.2d at 656 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)). Because credibility of appellant's evidence must be assumed for the purpose of a directed verdict motion, we can envision no circumstances under existing law where a directed verdict is appropriate when the alleged father has testified that he did not have sexual intercourse with the mother during the period of conception.

## DECISION

The trial court erred in directing a verdict for respondent even though a blood test showed that a 99.96% probability that appellant was the father of the child and appellant had a statutory duty to prove that he was not the father. Appellant's denial that he had sexual intercourse with the mother had to be accepted as true for purposes of the directed verdict motion.

**Reversed and remanded.**